IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MANFREDO BARRIENTOS, ET AL. | * |
| *On Behalf of Themselves and All Others Similarly Situated* | * |
| PLAINTIFFS, | * |
| v. | * Case No: 13-cv-942-PWG |
| MID-ATLANTIC WAREHOUSE SERVICES, INC., ET AL. | * |
| DEFENDANTS | * |

*******************************************************************************

**PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF AN FLSA
COLLECTIVE ACTION AND TO FACILITATE IDENTIFICATION
AND NOTIFICATION OF SIMILARLY-SITUATED EMPLOYEES**

Plaintiffs, by and through undersigned counsel, hereby move this Honorable Court to grant conditional certification for the overtime claims alleged in this matter under the Federal Fair Labor Standards Act ("FLSA") and to facilitate the identification and notification of similarly situated employees pursuant to the collective action provision of the FLSA[1]. In support, Plaintiffs state as follows:

## I.     PROCEDURAL BACKGROUND

Plaintiffs have brought the above-captioned action on their own behalf and on behalf of other similarly-situated individuals who performed delivery related services for Defendants at Defendants' Brandywine, Maryland Regency Furniture store. In this action, Plaintiffs, on behalf

---

[1] "[C]ourts generally follow a two-stage approach when deciding whether the named plaintiffs in an FLSA action are 'similarly situated' to other potential plaintiffs...." *Parker v. Rowland Express, Inc.,* 492 F. Supp. 2d 1159, 1164 (D.Minn.2007); *see also Choimbol v. Fairfield Resorts, Inc.,* 475 F. Supp. 2d 557, 562 (E.D.Va.2006). The "notice stage" comes first; if the court makes the preliminary determination that notice should be given to potential class members, it "conditionally certifies" the class and potential class members can then "opt-in." *Parker,* 492 F. Supp. 2d at 1164 (*quoting Hipp v. Liberty Nat'l Life Ins Co.,* 252 F.3d 1208, 1218 (11th Cir.2001)). After most of the discovery has taken place and the matter is ready for trial, the defendant can initiate the second stage of inquiry by moving to "decertify" the class. At that point, the court makes a factual determination as to whether the class is truly "similarly situated." *Id.*

of themselves and the putative plaintiffs, seek the recovery of unpaid overtime compensation and damages under the FLSA.  At this time, no Scheduling Order has been issued and the parties have engaged in no formal discovery.

## II.   FACTUAL BACKGROUND[2]

1. Plaintiffs employed to perform furniture delivery and related services by Defendants Mid-Atlantic Warehouse Services, Inc. ("MAWS"), Regency Furniture of Brandywine, Inc. ("RFB"), and Regency Furniture, Inc. ("RF") (collectively, "Defendants") for various times from 2005 through about January 2013.

2. While employed, Defendants each acted substantially to recruit and hire Plaintiffs and other employees to fulfill RF and RFB's furniture delivery contracts and MAWS' work obligations under its contract with RF and RFB.

3. During the period of Plaintiffs' employment, each Defendant controlled and supervised the work Plaintiffs performed.

4. Throughout the course of Plaintiffs' employment, each of the Defendant's supervisors was regularly and customarily present in Plaintiffs' work area on a daily or near-daily basis.

5. On multiple occasions throughout the course of Plaintiffs' employment, each Defendant's supervisors and agents interacted with Plaintiffs.  During these interactions, each Defendant's supervisors and agents spoke either directly with Plaintiffs or through other bilingual employees.

---

[2] Plaintiffs have attached sworn Affidavits affirming each of the following facts.  Each relevant fact noted in this section is also alleged or referenced in Plaintiffs' Amended Complaint.

2

6. At all times throughout the course of Plaintiffs' employment, each of the Defendants had the authority to control Plaintiffs' work and the work of others and each of the Defendants had the power and authority to change the course of Plaintiffs' work duties and the work duties of others.

7. At all times throughout the course of Plaintiffs' employment, Plaintiffs recognized each Defendant's authority and obeyed each Defendant's instructions.

8. During the period of Plaintiffs' employment, Defendants paid Plaintiffs either a flat weekly salary or a salary in the method of a flat "day rate."

9. At all times during my employment Plaintiffs regularly and customarily worked sixty-six (66) or many more hours per week.

10. At all times during Plaintiffs' employment, Defendants had knowledge other employees and Plaintiffs regularly and customarily worked sixty-six (66) or many more hours per week and instructed Plaintiffs and other employees to work sixty-six (66) or many more hours per week.

11. At no time during Plaintiffs' employment did Defendants ever pay any furniture delivery employee or Plaintiffs at the rate of one-and-one-half (1½) times their regular rate of pay for hours worked each week in excess of forty (40).

12. At all times during Plaintiffs' employment, it was Defendants' common and company-wide policy to pay all furniture delivery employees either a day rate or flat salary for all hours worked each week including hours worked each week in excess of forty (40).

13. Plaintiffs are knowingly and actively pursuing this action on their own behalf and on behalf of all other similarly situated individuals who performed furniture deliveries for Defendants from Defendants' Brandywine Maryland Regency Furniture location during the time

period March 2010 through the present.

14. Plaintiffs have personal knowledge that each of these other similarly situated employees performed substantially similar work duties to Plaintiffs and did not received compensation equal to one-and-one-half (1½) times their regular rate of pay for hours worked each week in excess of forty (40).

15. In the present case, the number of class members who performed delivery related work duties for Defendants but were not compensated as required by law for overtime hours worked each week is at least thirty (30) other not-yet-joined current and former employees.

16. Plaintiffs have personal knowledge that information relating to these not-yet-joined class members is in the possession and control of the Defendants.

### III.   LEGAL ARGUMENT

**A.   The FLSA Authorizes Similarly-Situated Employees to Litigate Collectively.**

Under 29 U.S.C § 216(b) of the FLSA, "an action … may be maintained against any employer … in any Federal or State Court of competent jurisdiction by any one or more employees for and in behalf of themselves *and other employees similarly situated*." *Id.* (emphasis added).

For over seventy-five (75) years, Federal Courts have been examining the extent to which one or more named plaintiffs must be "similarly situated" to the proposed group of unnamed plaintiffs in order for all of the plaintiffs to proceed before the court together as a collective action. In *Shain v. Armour & Co.*, 40 F. Supp. 488 (W.D.Ky.1941), which involved a claim for unpaid overtime wages, the court analyzed the "similarly situated" standard, and concluded as follows:

> The [FLSA] authorizes an employee to sue for himself 'and other employees similarly situated.' It is very comprehensive and inclusive; it contains no restrictions other than that the other employees be similarly situated. . . . *Employees may be similarly situated without being identically situated. The evident purpose of the Act is to provide one lawsuit in which the claims of different employees, different in amount but all arising out of the same character of employment, can be presented and adjudicated, regardless of the fact that they are separate and independent of each other.*

*Id.* at 490 (emphasis added).

In the years following the *Shain* decision, this same conclusion has repeatedly been reached by numerous other courts. *See, e.g.*, *Bradford v. Bed Bath & Beyond*, 184 F. Supp. 2d 1342, 1345 (N.D. Ga. 2002); *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 596 (S.D. Ohio 2002); *Hyman v. First Union Corp.*, 982 F. Supp. 1, 7 (D.D.C. 1997); *Schwed v. G.E. Co.*, 159 F.R.D. 373, 375 (N.D.N.Y. 1995); *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988); *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 443 (N.D. Ill. 1982); *Riojas v. Seal Produce, Inc.*, 82 F.R.D. 613, 616 (S.D. Tex. 1979).

In *Hoffmann-LaRoche v. Sperling,* 493 U.S. 165 (1989), the United States Supreme Court resolved a split among the circuits with respect to the role the courts should take in supervising the "opt-in" process and held that the district courts have discretion to implement § 216(b) by facilitating notice to potential plaintiffs. In *Hoffmann-La Roche*, the Supreme Court made the following additional important pronouncements: (1) once an action is filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way; *Id.* at 170-171; (2) it lies within the discretion of the trial court to begin its involvement early at the point of initial notice; *Id.* at 171; (3) by monitoring the preparation and distribution of the notice, the Court can insure that it is timely, accurate, and informative; *Id.* at 172; and (4) the district court has discretion, early in the litigation, to permit discovery of the names and addresses of employees to insure that such

5

potential Plaintiffs are promptly and accurately notified; *Id*. at 170.

Significantly, "[t]he strict requirements of Rule 23 of the Federal Rules of Civil Procedure do not apply to FLSA 'collective actions,' and thus no showing of numerosity, typicality, commonality and representativeness need be made.  Rather, plaintiffs must meet only one threshold requirement:  they must demonstrate that potential class members are 'similarly situated.'" *Levinson v. Primedia, Inc.*, No. 02Civ.2222, 2003 WL 22533428, at *1 (S.D.N.Y. Nov. 6, 2003).  Moreover, the mere fact that the employees are categorized in a certain way by their employer[3] or that the employees may work in multiple locales[4] is irrelevant to the issue of whether or not they are similarly situated for purposes of a collective action under the FLSA.

> **B.   The Motion Should Be Granted Because the District Court is Authorized to Help Facilitate the Notification of Similarly-Situated Employees.**

It is well-settled that "[d]istrict courts have the discretionary power to authorize the sending of notice to potential class members to inform them of the action and to give them the opportunity to participate by opting in."  *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 237-38 (N.D.N.Y. 2002) (citing *Hoffmann-LaRoche v. Sperling*, 493 U.S. 165, 169-70 (1989)); *Kane v. Gage Merch. Serv., Inc.*, 138 F. Supp. 2d 212, 214 (D. Mass. 2001) (same). Indeed, "it is 'unlikely that Congress, having created a procedure for representative action [under the FLSA], would have wanted to prevent the class representatives from notifying other

---

[3] *See, e.g.*, *De Asencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660, 663-64 (E.D. Pa. 2001) (court authorized notice to potential plaintiffs in unpaid overtime case despite fact that plaintiffs worked "at various production positions within [defendant's] two plants").

[4] In *Hyman v. First Union Corp.*, 982 F. Supp. 1 (D.D.C. 1997), the district court permitted an FLSA case to proceed as a collective action despite the fact that the proposed members of the class were from three different states—Virginia, Maryland, and the District of Columbia.  *See id*. at 4; *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 307-08 (S.D.N.Y. 1998) (court allowed plaintiffs to notify similarly situated employees in unpaid overtime case even though employees worked at 15 different restaurants).

6

members of the class that they had a champion.'" *Cook v. United States*, 109 F.R.D. 81, 83 (E.D.N.Y. 1985) (citation omitted).

The rationale for this court-facilitated notification procedure was best explained by the United States Supreme Court in *Hoffmann-LaRoche, supra*:

> A collective action allows [FLSA] plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [wrongful] activity. *These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate. Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties.*

*Id*. at 170 (emphasis added).

The United States District Court for the District of Maryland has granted identical motions filed by counsel for Plaintiffs in five (5) recent cases, *Venus Rawls, et al. v. Augustine Home Health Care, Inc.*, Civil Action No. WMN-05 -2602 (motion granted by Judge Nickerson in January 2006); *Frisley Reyes, et al. v. Superior Maintenance & Management Company, Inc., et al*., Civil Action No.: RWT-03-3631 (motion granted by Judge Titus in late 2004); *Turner v. Human Genome Sciences, Inc*., Civil Action No. DKC-01-3580 (motion granted by Judge Chasanow in 2002); *Gionfriddo, et al. v. Jason Zink, LLC, et al.* (motion granted by Judge Bennett February 2, 2010); *Lane, et al. v. Ko-Me,* LLC (motion granted by Judge Chasanow November 24, 2010). In all five (5) cases, additional plaintiffs joined after the Court ordered the defendant(s) to provide the names and addresses of similarly-situated employees and notices were sent advising them of the pendency of the action and of the opportunity to join the lawsuit.

### C. The Motion Should Be Granted Because Plaintiffs' Standard of Proof at this Stage is "Modest".

In making the "similarly situated" determination, this Court employs a two-step procedure which involves an initial assessment as to whether notification of similarly situated employees is warranted under the circumstances, and a subsequent, more finalized determination regarding the management and resolution of the claims filed by those employees who, having been so notified, actually elected to seek redress before the Court. This procedure was summarized by the United States District Court for the Southern District of New York:

> Once the Plaintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff: "[T]he Court need not evaluate the merits of [a plaintiff's] claims in order to determine that a definable group of 'similarly situated' plaintiffs" exists. "[T]he court need only reach a *preliminary* determination that potential plaintiffs are 'similarly situated.'" Certainly the Plaintiff must still prove at trial that the positions at issue actually qualify as non-exempt under the FLSA. But that is not the inquiry to be answered in deciding this motion. The ultimate determination regarding the merits of the case, and whether the class is properly situated -- which requires a more "stringent" inquiry -- is made later in the litigation process, after more thorough discovery.
>
> Here, I determine only that notice may be sent to those people who, at this very preliminary stage in the litigation, might be potential plaintiffs. I am not determining that those being notified "are, in fact, similarly situated" to the Plaintiff, and I make no determination regarding the legal rights and responsibilities of the parties. Again, the Plaintiff's burden for proving that he is similarly situated to these potential plaintiffs is minimal for this preliminary determination -- a determination that can be modified or reversed after discovery is complete. Should it become clear later that the parties who have opted-in are not similarly situated to the Plaintiff here, I will make any rulings that are necessary and appropriate to ensure that the case is properly formed.[5]

*Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91 at 96 (emphasis in original) (citations omitted); *see also Goldman v. Radio Shack Corp.*, No. 2:03-CV-0032, 2003 WL

---

[5] The New York court then noted that "should discovery reveal that plaintiffs in fact are not similarly situated, or that only plaintiffs who worked in the same . . . [location] or who held the same job type are similarly situated, I may later decertify the class, or divide the class into subgroups, if appropriate." *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 96 n.1 (S.D.N.Y. 2003) (quoting *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998)).

8

21250571, at *8 (E.D. Pa. April 16, 2003) (the first stage of the two-step procedure "requires a lax showing of 'similarly situated'"); *Carter v. Indianapolis Power and Light Co.*, WL 23142183, at *3 (S.D. Ind.) 2003. ("Before notice is authorized, the court is not required to come to a 'final determination' that the similarly-situated requirement has been met.").

Thus, under the current circumstances of the instant case, where Plaintiffs merely seek the identification of and notification to prospective class members at an early stage in the litigation, Plaintiffs "need only 'mak[e] a *modest* factual showing sufficient to demonstrate that [they] and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Roebuck*, 239 F. Supp. 2d at 238 (emphasis added) (quoting *Realite*, 7 F. Supp. 2d at 306); *see also Pritchard*, 210 F.R.D. at 596. In other words, "plaintiff[] need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist." *Schwed*, 159 F.R.D. at 375-76; *see also Severtson v. Phillips Beverage Co.*, 141 F.R.D. 276, 278 (D. Minn. 1992) ("plaintiffs [need only] come forward with evidence that establishes a colorable basis for their claim that the potential plaintiffs are similarly situated").

The reason for such a lenient burden is that "a strict standard of proof on the plaintiffs at this stage would unnecessarily hinder the development of collective actions and would undermine the 'broad remedial goals' . . . of the FLSA." *Tucker v. Labor Leasing, Inc.*, 155 F.R.D. 687, 690 (M.D. Fla. 1994) (quoting *Garner v. Searle Pharm. & Co.*, 802 F. Supp. 418, 422 (M.D. Ala. 1991)). Accordingly, "[a]t this initial 'notice stage,' the court usually relies 'only on the pleadings and any affidavits that may have been submitted'" in ruling on motions like the one being presented by Plaintiffs herein. *Kane*, 138 F. Supp. 2d at 214 (citations omitted); *see also Mooney v. Aramco Servs., Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995).

Finally, it is important to note that prompt notification of the potential class members is critical in that, unlike a Rule 23 class action, the statute of limitations is not tolled for those potential class members by the filing of the present Complaint. *See* 29 C.F.R. § 790.21(b) (in collective actions under the FLSA, unnamed plaintiffs are not deemed to have commenced the action until such time as his/her written consent to become a party plaintiff is filed in the court).

> D. **The Motion Should Be Granted Because Plaintiffs Have Met Their Burden of Demonstrating that Other Furniture Deliver Employees Are "Similarly Situated" With Respect to Their Entitlement to Unpaid Overtime Compensation.**

As set forth above, in the Plaintiffs' pleadings, and in Plaintiffs' attached Affidavits, Plaintiffs and many other current and former employees who performed furniture delivery related services for Defendants at Defendants' Brandywine, Maryland Regency Furniture store between March 2010 and the present were not properly compensated by Defendants at the FLSA prescribed overtime rate for a significant number of hours worked each week. Plaintiffs have alleged and affirmed that it was Defendants' common and company-wide practice to pay Plaintiffs and other similarly situated individuals at a flat salary or flat "day rate" and, in doing so, fail and refuse to pay overtime compensation at the rate prescribed by the FLSA. Therefore, it axiomatic that Defendants' unlawful pay practices have violated the FLSA overtime rights of numerous other current and former individuals employed by Defendants.

### IV.   CONCLUSION

It is abundantly clear that a named plaintiff in a lawsuit to recover unpaid overtime compensation under the FLSA is permitted, with Court approval, to provide notice of the suit to those potential plaintiffs who worked in a class of similarly-situated employees. This case calls for such action.

WHEREFORE, Plaintiffs hereby respectfully request this Honorable Court:

A. Enter an Order compelling Defendants to produce to Plaintiffs' counsel, within fifteen (15) days, a list of the full name, last known residential address, last known work address, last known phone number(s), and last known e-mail address of each and every individual who performed delivery related services for Defendants at Defendants' Brandywine, Maryland Regency Furniture store at any time since March 1, 2010;

B. Approve the attached "Important Notice" form for future use in notifying the group of potential plaintiffs; and

C. Grant all other and further relief that the nature of this cause may require.

    Respectfully submitted,

    ___/s/ Gregg C. Greenberg_____
    Gregg C. Greenberg, Bar No. 17291
    The Zipin Law Firm, LLC
    836 Bonifant Street
    Silver Spring, Maryland 20910
    Phone:  301-587-9373
    Fax:  301-587-9397
    Email:  ggreenberg@zipinlaw.com

    *Counsel for Plaintiffs*